IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GLENDA WHITE,

                    Plaintiff,

v.                                              CIVIL ACTION NO.  2:21-cv-00581

DEPUTY THOMPSON, et al.,

                    Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for Summary Judgment. [ECF No. 34]. For the reasons explained below, the motion is **GRANTED in part and DENIED in part**.

I.    **Background**

On October 28, 2021, Plaintiff, Glenda White, filed a Complaint relating to injuries she sustained during an encounter with Jackson County police officers. [ECF No. 1].

Specifically, Ms. White alleges that on October 29, 2019, Deputy Roberts of the Jackson County Sheriff's Department responded to an emergency call at a residence in Jackson County, at which time he found Ms. White "in a distressed medical and/or psychiatric condition" and informed Ms. White's "friends/relatives that they could get a mental hygiene petition for [her]." *Id.* ¶ 6. Thirty minutes later, Deputy Roberts

returned to the residence, arrested Ms. White for assaulting her boyfriend, and transported her to the Jackson County Sheriff's Office for processing. *Id.* ¶ 7. Ms. White contends that after she was processed, either Deputy Thompson or Deputy Williams attempted to move her from her chair to a holding cell and in the process "threw her to the floor and stomped [on] her clavicle," thereby breaking her clavicle bone. *Id.* ¶ 8.

Initially, Ms. White's Complaint asserted a total of five claims against four defendants. On April 28, 2022, I dismissed all claims against Sheriff Boggs and the Jackson County Commission. [ECF No. 27, at 8]. I also dismissed Ms. White's Negligence and *Monell* and Supervisory Liability claims against Deputies Thompson and Williams. *Id.* at 9. Accordingly, only Ms. White's claims of Battery (Count II), Outrageous Conduct/Intentional Infliction (Count III), and Excessive Force and Illegal Seizure (Count IV) remain pending against Deputies Thompson and Williams. *Id.*

On September 12, 2022, Deputies Thompson and Williams filed their Motion for Summary Judgment on the remaining claims. [ECF No. 34]. Ms. White filed a Response on September 26, 2022, [ECF No. 36],[1] and Defendants replied on October 3, 2022, [ECF No. 37]. The motion is now ripe for decision.

---

[1] The brief submitted by Plaintiff clearly contains sections copied and pasted from a brief filed in *Nutter v. Mellinger*, No. 2:19-cv-00787 (S.D. W. Va. July 26, 2021), ECF No. 47, and thus it references inaccurate facts and irrelevant claims. Rule 11 requires an attorney to review each document prior to submitting it to the court. Fed. R. Civ. P. 11 Here, counsel's failure to detect his error is perplexing as such a glaring mistake could have easily been cured with minimal review and editing.

## II.   Standard of Review

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the court reviews all the evidence "in the light most favorable" to the nonmoving party. *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. *Id.* at 248–52. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the

granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### III.  Discussion

#### A.  Federal Law Claims

Count IV appears to assert several federal constitutional claims arising under 42 U.S.C. § 1983, including excessive force, illegal arrest, and deprivation of medical treatment. I will address each claim individually.

##### 1.  Excessive Force

The doctrine of qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The determination of whether a state official receives the benefit of qualified immunity is a two-step process. Viewing the facts in the light most favorable to the plaintiff, the court must decide (1) whether there was a constitutional violation, and (2) whether the right violated was clearly established at the time of the violation. *Id.* at 232. Whether a right is clearly established is a question of law, while a genuine question of material fact regarding whether the conduct actually occurred "must be reserved for trial." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A right is clearly established if "every 'reasonable official would [understand] that what he is

doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"It is clearly established that the Fourth Amendment confers upon individuals a constitutional right to be free from excessive force during the course of an arrest." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 769 (S.D. W. Va. 2015) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Excessive force occurs when an officer uses more force than is objectively reasonable in the situation. *Graham*, 490 U.S. at 397. To determine whether a use of force was objectively reasonable, the court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)). The inquiry is a fact specific one, analyzing factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The seriousness of a plaintiff's injuries is also relevant. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). In this case, whether or not qualified immunity shields Deputies Williams and Thompson from § 1983 liability depends upon whether or not the force employed against Ms. White was excessive.

### a.  Deputy Williams

Here, the parties agree that Deputy Williams did not use excessive force against Ms. White. Indeed, Ms. White admitted in her deposition that she did not

"think [Deputy] Williams had anything to do with [the incident]" and that she did not know why he was a party to this lawsuit. [ECF No. 34-1 ("White Dep.") 55:1–2, 14–20].[2] Because no constitutional violation for use of excessive force occurred, Deputy Williams is entitled to qualified immunity. His Motion for Summary Judgment as to Ms. White's excessive force claim is **GRANTED**.

### b.  Deputy Thompson

With respect to Deputy Thompson's conduct, the parties offer materially different accounts of the incident resulting in Ms. White's injuries. Deputy Thompson states that after Ms. White had been processed, Deputy Williams attempted to lead her to a holding cell, at which time Ms. White became combative. [ECF No. 34-3, ¶¶ 7–9]. Deputy Thompson alleges that after Ms. White scratched Deputy Williams's face, he approached Ms. White from behind and grabbed her around the shoulder area to separate her from Deputy Williams. *Id.* ¶¶ 9–10. Deputy Thompson states that his attempt to pull Ms. White away from Deputy Williams caused himself, Ms. White, and Deputy Williams to fall to the ground. *Id.* ¶ 11. He states that Ms. White fell on her shoulder and that he fell on top of her. *Id.* Deputy Thompson further asserts that "[a]t no[] time did [he] throw, trip, or stomp on Ms. White's person" and that he "was not intending to engage in a use of force against Ms. White." *Id.* ¶ 12. Deputy Williams offers a similar version of events, stating that "[w]hile [he] was attempting to restrain Ms. White, Deputy Thompson came from behind, grabbed both

---

[2] When citing to Defendants' attachments to their Motion for Summary Judgment, the court uses the pages numbers assigned by the federal judiciary's Case Management/Electronic Case File system.

[Deputy Williams] and Ms. White," and caused them to "all [fall] to the ground." [ECF No. 34-2, ¶ 11].

In Ms. White's deposition, she affirmatively states that "[she] remember[s] [Deputy Thompson] tripping [her] or throwing [her] down on the ground and [her] head bouncing off the floor." White Dep. 55:3–5, 56:1–3 ("I remember my head bouncing off the floor and then his foot being there and him having a hold of my arm."). Ms. White also states that once she was on the ground Deputy Thompson was standing over her with his foot on her injured shoulder. White Dep. 62:2–12 ("Q. [Deputy] Thompson had his foot on your right shoulder – your injured shoulder? A. Yes."); 63:2–15. Yet, at other points in the same deposition, Ms. White speculates as to the events leading to her injuries. *E.g.*, White Dep. 59:6–11 ("[Deputy Thompson] either tripped me or threw me down. I don't really know. Because I was on the floor, and his foot was in my shoulder right there. And he had a hold of my hand somehow or another . . . stretched up."); 89:8–14, 18–19 (Q. "Did he stomp your shoulder, or did he just push up against it until you had the injury? A. You know, I don't know. I thought that I was stomped. But it seems like I remember him having a hold of my arm stretched out, but I don't know. . . . I don't know. It's just like bits and pieces."); 93:12–15 ("Q. Do you have a specific memory of him grabbing you? A. I want to say I do, but I'm not sure.").

Ms. White also directs the court to three photographs taken after the incident, which she states "clearly reflect a bruising in the form of a shoe print" on her shoulder.

[ECF No. 36, at 3]. The photographs depict two bruises on Ms. White's right chest and shoulder. *Id.* at 12. One of the bruises is a large oval-shape located on the top of Ms. White's chest, while the other bruise is a near-perfect circle located on her shoulder. *Id.* There is a small gap between the two bruises. *Id.*

In their Motion for Summary Judgment, the Defendants cite cases in support of their argument that Plaintiff's inability to fully recall Deputy Thompson's actions does not create an issue of fact for trial. [ECF No. 35, at 9]. In those cases, the plaintiffs relied on testimony that the plaintiff or a witness could not recall seeing or receiving certain documents in support of their argument that a question of fact existed regarding whether the documents were in fact posted or delivered. *See Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983); *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 53–55 (1st Cir. 1999). Ultimately, the two courts concluded that the statements alone were insufficient to create a question of fact. *Posey*, 702 F.2d at 106; *I.V. Servs. of Am., Inc.*, 702 F.2d at 55.

Unlike the cases cited by the Defendants, here, Ms. White's vague memory is not the only evidence suggesting that a factual dispute exists. In addition to her deposition testimony, Ms. White points the court to photographs taken after the incident, which she describes as "clearly reflect[ing] a bruising in the form of a shoe print on [her] body." [ECF No. 36, at 3]. This court must view all underlying facts and draw any reasonable inferences in the light most favorable to Ms. White, the nonmoving party. In examining the photographs, the bruises on Ms. White's chest

and shoulder have a remarkable resemblance to the bottom heel and sole of an adult shoe. I find that the shape of Ms. White's bruising could reasonably be determined to be consistent with a shoe print and that a reasonable jury could conclude that a bruise in the shape of a near-perfect shoe print could only have been created by a forceful stomp on Ms. White's body. In this case, the photographs constitute physical evidence corroborating Ms. White's testimony and give rise to a factual dispute concerning whether Ms. White's shoulder was stomped or fallen on.

While force may be justified where an individual is resisting seizure, the degree of force must be reasonably calculated to the risk posed by the resistance. *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 901 (4th Cir. 2016). Here, Ms. White admits that she might have refused commands to enter a holding cell. White Dep. 61:3–4,7 –9 ("Q. Is it possible that you were told to get in the holding cell and refused? . . . A. I just don't think I would have refused. Maybe if he was going to try to put handcuffs on me or something."). However, even if Ms. White had been noncompliant, a jury could infer that she was subdued after being taken to the ground. If she were subsequently stomped on, a reasonable jury could find that such action amounts to excessive force.

For the reasons stated, Deputy Thompson is not entitled to summary judgment based on qualified immunity. His Motion for Summary Judgment as to Ms. White's excessive force claim is **DENIED**.

## 2.  Illegal Arrest

To establish a false arrest claim under the Fourth Amendment, a plaintiff must affirmatively show that the officer was personally involved in the deprivation of the plaintiff's rights, *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985), in that the officer arrested the plaintiff without probable cause, *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Here, Ms. White has failed to demonstrate any personal connection between the Defendants and the alleged false arrest.

In their affidavits, Deputies Thompson and Williams each deny involvement in the arrest of Ms. White on October 29, 2019, and assert that the arresting officer was Lieutenant Todd Roberts. [ECF No. 34-2, ¶ 4; ECF No. 34-3, ¶ 4]. The Defendants also have put forth a criminal complaint from the night of Ms. White's arrest, which is signed by Lieutenant Roberts and states that he and Deputy Varney were the officers dispatched to Ms. White's residence after receiving a call that she was breaking windows. [ECF 34-4, at 1–2]. Deputies Thompson and Williams are only mentioned in the narrative after Lieutenant Roberts "transported [Ms.] White to the Sheriff's Office." *Id.* at 2. In Ms. White's deposition, she explains that she cannot recall her arresting officer, and she states that she is unable to differentiate between Lieutenant Roberts and Deputy Williams. White Dep. 51:7–18, 53:21–54:5 ("Q. Do you have any recollection of the difference between Deputy Williams and Lieutenant Roberts? A. Yeah. I think [Lieutenant] Roberts was the one that was there. See, I don't remember [Deputy] Williams. That's what I was thinking whenever I got these

papers, that it wasn't [Deputy] Williams, that it was [Lieutenant] Roberts – Todd
Roberts. Am I right?").

Deputies Thompson and Williams have met their burden of demonstrating the
absence of a genuine issue of material fact with respect to Ms. White's false arrest
claim. Ms. White, in return, has not submitted any evidence from which a reasonable
jury could conclude that the Defendants were personally involved in her arrest. As
such, Defendants' Motion for Summary Judgment on Count IV is **GRANTED** with
respect to any claim of false arrest.

### 3. Deprivation of Medical Treatment

Although deliberate indifference is typically considered an Eighth Amendment
claim, where the claimant "was a pretrial detainee and not a convicted prisoner at
the time of the alleged denial, this claim is governed by the due process clause of the
[F]ourteenth [A]mendment rather than the [E]ighth [A]mendment[]." *Martin v.
Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *City of Revere v. Mass. Gen. Hosp.*,
463 U.S. 239, 244 (1983)). "The due process rights of a pretrial detainee are at least
as great as the [E]ighth [A]mendment protections available to the convicted prisoner;
while the convicted prisoner is entitled to protection only against punishment that is
'cruel and unusual,' the pretrial detainee . . . may not be subjected to *any* form of
punishment." *Id.* (emphasis in original). The Fourth Circuit has held that "a pretrial
detainee makes out a due process violation if he shows 'deliberate indifference to

serious medical needs' within the meaning of" Eighth Amendment jurisprudence. *Id.* at 871 (citation omitted).

"In order to state a cognizable claim [for denial of medical care], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must offer "proof that the medical need in question is objectively 'serious,' and that the defendant acted with subjective indifference, meaning he or she 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Further, the subjective mental state required of a deliberately indifferent actor is "more than mere negligence." *Farmer*, 511 U.S. at 835. It is instead "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citing *Farmer*, 511 U.S. at 835). "Failure to respond to an inmate's known medical needs raises an inference that there was deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other*

*grounds*, *Farmer*, 511 U.S. at 837. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842.

Here, I have little trouble concluding that Ms. White had an objectively serious medical need when she fractured her clavicle bone while in police custody. The next question is whether Deputies Thompson and Williams were deliberately indifferent to Ms. White's obvious medical need. In their affidavits, Deputies Thompson and Williams state that Ms. White began complaining of shoulder pain once she was placed inside her holding cell and that in response they requested that an emergency medical services ("EMS") worker evaluate Ms. White for injuries. [ECF No. 34-2, ¶ 15; ECF No. 34-3, ¶ 13]. The Defendants state that the EMS worker advised them that Ms. White had possibly broken her collarbone and that Ms. White was subsequently transported to the hospital. [ECF No. 34-2, ¶¶ 15–16; ECF No. 34-3, ¶¶ 13–14]. In Ms. White's deposition, she avers that she does not have any memory of an EMS worker evaluating her but that there is a "possibility" that the evaluation occurred. White Dep. 66:1–23. She states that she remembers police officers taking her to the hospital after she was injured but that she is unsure as to what treatment she received. White Dep. 67:4–18, 68:1–3, 70:6–7, 15–19, 71:3. Ms. White admitted that if she received treatment, it would be in her medical records from the hospital. White Dep. 68:4–7.

The Defendants have submitted a medical record, dated October 29, 2019, from Jackson General Hospital, which lists Ms. White as a patient. [ECF No. 34-5]. According to the record, Ms. White was brought to the emergency room by law enforcement and was complaining of right clavicle pain. *Id.* at 1. An x-ray was taken of Ms. White's clavicle, which showed a fracture. *Id.* at 4. The record indicates that Ms. White was given ibuprofen at the hospital as well as a prescription for additional ibuprofen before being discharged. *Id.*

The undisputed facts do not demonstrate that Deputies Thompson and Williams were deliberately indifferent to Ms. White's serious medical needs. In fact, the record shows that Ms. White received prompt medical attention after sustaining an injury to her shoulder while in police custody. For this reason, Defendants' Motion for Summary Judgment on Count IV is **GRANTED** with respect to Ms. White's claim that Defendants denied her adequate medical treatment.

### B. State Law: Battery

The Supreme Court of Appeals of West Virginia has adopted the definition of battery stated in the Restatement (Second) of Torts, which provides:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*McKenzie v. Sevier*, 854 S.E.2d 236, 245 (W. Va. 2020) (quoting Restatement (Second) of Torts §§ 13(a) and (b)). A defendant can avoid liability for battery if he is otherwise

privileged to engage in the complained of conduct. *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010). For police officers, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Battery claims against police officers acting in their official capacity are therefore evaluated according to the Fourth Amendment reasonableness standard. *Hutchinson*, 731 F. Supp. 2d at 547. However, force that would otherwise constitute a battery is *not* privileged if the amount of force used was excessive. Restatement (Second) of Torts § 132 ("The use of force against another for the purpose of effecting the arrest or recapture of the other, or of maintaining the actor's custody of him, is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary.").

Also, under West Virginia law, an employee of a political subdivision is immune from liability unless: "(1) [the employee's] acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [the employee's] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of" West Virginia law. W. Va. Code § 29-12A-5(b).

### 1.  Deputy Williams

Like the excessive force claim, the parties agree that Deputy Williams did not batter Ms. White. Ms. White admitted in her deposition that she did not "think

15

[Deputy] Williams had anything to do with [the incident]" and that she did not know why he was a party to this lawsuit. White Dep. 55:1–2, 14–20. Because no reasonable trier of fact could find other than for Deputy Williams, his Motion for Summary Judgment as to Ms. White's battery claim is **GRANTED**.

### 2.  Deputy Thompson

As discussed in the previous section on excessive force, there are genuine issues of material fact regarding the force used by Deputy Thompson against Ms. White. Additionally, whether Deputy Thompson's conduct was undertaken with a "malicious purpose, in bad faith, or in a wanton or reckless manner," stripping him of statutory immunity, depends on the nature of his conduct and the context in which it occurred. Accordingly, Deputy Thompson is not entitled to summary judgment on Ms. White's battery claim. His Motion for Summary Judgment on Ms. White's battery claim is **DENIED**.

### C.  State Law: Outrageous Conduct/Intentional Infliction

The Supreme Court of Appeals of West Virginia has held that a plaintiff cannot recover twice for a single injury. Syl. Pt. 7, *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692, 694, 705 (W. Va. 1982); *see also Anderson v. Barkley*, No. 2:19-cv-00198, 2020 WL 7753290, at *3 (S.D. W. Va. Dec. 29, 2020). An action for assault and battery allows a plaintiff to recover damages for any resulting emotional distress, and thus a claim for intentional infliction of emotional distress ("IIED") "is duplicitous of a claim for . . . battery, where both claims arise from the same event." Syl. Pt. 4, *Criss*

*v. Criss*, 356 S.E.2d 620, 622 (W. Va. 1987). Accordingly, when an IIED claim arises from the same event as a battery claim, the two claims cannot simultaneously go forward. *Id.* In fact, this court consistently dismisses IIED claims at the motion to dismiss and summary judgment stages when those claims arise from the same events as assault and battery claims. *See, e.g., Lilly v. Crum*, No. 2:19-cv-00189, 2020 WL 1879469, at *6 (S.D. W. Va. Apr. 15, 2020); *Pearson v. Thompson*, No. 2:19-cv-00321, 2019 WL 4145613, at *2 (S.D. W. Va. Aug. 29, 2019); *Anderson*, 2020 WL 7753290, at *3.

Here, Ms. White's IIED claim arises from the same event as her battery claim: throwing her to the ground and stomping on her clavicle. Because the IIED claim is duplicative of the battery claim, Defendants' Motion for Summary Judgment on Count III—Outrageous Conduct/Intentional Infliction—is **GRANTED**.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 34] is **GRANTED** as to all claims against Deputy Williams. As to Deputy Thompson, the Motion for Summary Judgment is **GRANTED in part and DENIED in part**. Deputy Thompson is entitled to summary judgment on Ms. White's claims of illegal arrest, deprivation of medical treatment, and IIED. Ms. White's § 1983 claim of excessive force and state law claim of battery remain against Deputy Thompson.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      November 8, 2022

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE