IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GLENDA WHITE,

          Plaintiff,

v.                                            CIVIL ACTION NO. 2:21-cv-00581

DEPUTY THOMPSON,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Deputy Jonathan Thompson's Renewed Motion for Summary Judgment. [ECF No. 48]. For the reasons explained below, the motion is **GRANTED**.

I.    Background

On October 28, 2021, Plaintiff, Glenda White, filed a Complaint relating to injuries she sustained during an encounter with Jackson County police officers. [ECF No. 1]. Specifically, Ms. White alleges that on October 29, 2019, Deputy Roberts of the Jackson County Sheriff's Department responded to an emergency call at a residence in Jackson County, at which time he found Ms. White "in a distressed medical and/or psychiatric condition" and informed Ms. White's "friends/relatives that they could get a mental hygiene petition for [her]." *Id.* ¶ 6. Thirty minutes later, Deputy Roberts returned to the residence, arrested Ms. White for assaulting her

boyfriend, and transported her to the Jackson County Sheriff's Office for processing. *Id.* ¶ 7. Initially, Ms. White contended that after she was processed, either Deputy Thompson or Deputy Brandon Williams attempted to move her from her chair to a holding cell and in the process "threw her to the floor and stomped [on] her clavicle," thereby breaking her clavicle bone. *Id.* ¶ 8.

Ms. White's Complaint asserted a total of five claims against four defendants. On April 28, 2022, I dismissed all claims against Sheriff Tony Boggs and the Jackson County Commission. [ECF No. 27, at 8]. I also dismissed Ms. White's Negligence (Count I) and *Monell* and Supervisory Liability (Count V) claims against Deputies Thompson and Williams. *Id.* at 9. Ms. White's claims of Battery (Count II), Outrageous Conduct/Intentional Infliction (Count III), and Excessive Force and Illegal Seizure (Count IV) remained pending against Deputies Thompson and Williams following the entry of that Order. *Id.*

Deputies Thompson and Williams filed a joint Motion for Summary Judgment on September 12, 2022. [ECF No. 34]. On November 8, 2022, I granted summary judgment as to all claims asserted against Deputy Williams. [ECF No. 39, at 17]. Additionally, I granted summary judgment to Deputy Thompson on Ms. White's claims of illegal arrest, deprivation of medical treatment,[1] and intentional infliction of emotional distress. *Id.* I denied Deputy Thompson's motion with respect to Ms.

---

[1] While Count IV of Ms. White's Complaint is labeled "Excessive Force and Illegal Seizure," it also appeared to assert a claim for denial of medical treatment, [ECF No. 1, ¶ 19 (stating that no reasonable police officer would have "fail[ed] to see to it that the plaintiff received proper medical treatment")], which I addressed in the Memorandum Opinion and Order, [ECF No. 39, at 11–14].

2

White's claims of excessive force and battery based on a photograph Ms. White submitted of bruising in the shape of "a near-perfect shoe print" on her chest and shoulder, which appeared to corroborate her assertion that Deputy Thompson stomped on her clavicle. *Id.* at 8–9, 16–17.

On December 11, 2022, the day before the pretrial conference, Ms. White revealed that defense counsel disclosed a video to her showing that Deputy Thompson did not stomp on her but he "body slam[med] her in such a manner as to injure her unnecessarily." [ECF No. 45, at 2–3]. In light of the new evidence, I reopened discovery for a period of thirty days, and I instructed the parties that they had fifteen days after the close of discovery to file motions for summary judgment. [ECF No. 46].

On February 1, 2023, Deputy Thompson timely filed his Renewed Motion for Summary Judgment. [ECF No. 48]. The video of the incident is included as Exhibit 1. [ECF Nos. 48-1, 50-1]. Ms. White filed a Response on February 15, 2023, [ECF No. 51], and Deputy Thompson replied on February 22, 2023, [ECF No. 52]. The motion is ripe for decision.

## II. Standard of Review

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). "Facts are 'material' when they might affect the

outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

When ruling on a motion for summary judgment, the court reviews all the evidence "in the light most favorable" to the nonmoving party. *Providence Square Assocs., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. *Id.* at 248–52. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

4

### III. Discussion

The court will first consider Ms. White's federal claim of excessive force brought pursuant to 42 U.S.C. § 1983 and then turn to her state law claim of battery.

#### A. Excessive Force (Count IV)

The doctrine of qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The determination of whether a state official receives the benefit of qualified immunity is a two-step process. Viewing the facts in the light most favorable to the plaintiff, the court must decide (1) whether there was a constitutional violation, and (2) whether the right violated was clearly established at the time of the violation. *Id.* at 232. If the answer to either question is no, then the defendant is entitled to qualified immunity. Whether a right is clearly established is a question of law, while a genuine question of material fact regarding whether the allegedly violative conduct actually occurred "must be reserved for trial." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A right is clearly established if "every 'reasonable official would [understand] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It is clearly established that "the Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts

5

to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). "[T]he Fourteenth Amendment's standard is analogous to the Fourth Amendment's." *Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1182 (11th Cir. 2020). The test for evaluating "a pretrial detainee's excessive force claim is solely an objective one." *Kingsley*, 576 U.S. at 397. To prevail, "a pretrial detainee must show only that the force purposely or knowingly used against [her] was objectively unreasonable." *Id.* at 396–97. The United States Supreme Court has provided several factors for courts to consider when determining the reasonableness of an officer's actions, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397. Moreover, a court must consider "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In this case, Deputy Thompson would not be shielded by qualified immunity if the force he employed against Ms. White was objectively unreasonable. *See id.* at 396–97.

In support of his Renewed Motion for Summary Judgment, Deputy Thompson submitted a video of his interaction with Ms. White in the booking room on the date she was injured.[2] [ECF Nos. 48-1, 50-1]. The video begins with Deputy Williams

---

[2] The video footage does not contain audio.

opening a cell door, while Deputy Thompson puts gloves on his hands. [ECF No. 50-1, at 0:00–07]. Ms. White is sitting in a chair in the corner of the booking room. *Id.* Deputy Williams appears to point to the open cell as the deputies approach Ms. White. *Id.* at 0:08–11. Deputy Williams places his hand on Ms. White's right shoulder, and Deputy Thompson reaches for Ms. White's left shoulder. *Id.* at 0:12–13. Ms. White immediately resists the deputies' attempt to force her into the cell, and a struggle ensues. *Id.* at 0:13–17. During the struggle, Ms. White pushes the deputies away from her, and in the process, she strikes Deputy Williams in the face. *Id.* at 0:18–19. The deputies grab at Ms. White's arms while another officer begins to approach the scuffle. *Id.* at 0:19–21. Suddenly, Ms. White, Deputy Williams, and Deputy Thompson all drop to the ground. *Id.* at 0:21–22. Deputy Thompson is holding Ms. White as the parties hit the ground, while the force of the landing causes Deputy Williams to lose his grasp on Ms. White's body. *Id.* at 0:22–24.

The struggle continues on the floor of the booking room. Deputy Thompson attempts to stand up with his arm wrapped around Ms. White. *Id.* at 0:25–26. He appears unable to regain full control of his balance, takes approximately three steps while holding Ms. White, and falls to the ground. *Id.* at 0:26–28. Ms. White hits the ground for a second time, but Deputy Thompson braces himself, which prevents him from falling on top of her. *Id.* at 0:27–28. Deputy Thompson brings himself and Ms. White to their feet while Deputy Williams and the other officer place her in handcuffs.

7

*Id.* at 0:29–46. Deputy Thompson then walks Ms. White into the open holding cell, at which point the video ends. *Id.* at 0:47–52.

The parties first hit the ground after Deputy Thompson forcefully pulled himself, Ms. White, and Deputy Williams down.[3] *Id.* at 0:19–22. At the time, however, Ms. White was physically resisting the deputies' efforts to place her in a holding cell. *Id.* at 0:12–22. When analyzed under the *Kingsley* factors, the force applied by Deputy Thompson in this case does not demonstrate objective unreasonableness.

The first *Kingsley* factor (the relationship between the need for the use of force and the amount of force used) weighs in favor of Deputy Thompson. In the prison setting, officers may use force "to preserve internal order and discipline and to

---

[3] Deputy Thompson contends that he accidently caused Ms. White to hit the ground. *See* [ECF No. 49, at 12]. He asserts that he grabbed Ms. White "around the shoulders and trie[d] to pull her away from Deputy Williams," which "cause[d] them all to fall on the ground because Deputy Thompson lost his footing." *Id.* The court's view of the parties' first collapse to the ground is partially obstructed by the body of a third officer. [ECF No. 50-1, at 0:20–22]. The court can only see the back of Deputy Thompson's shoulders and head prior to him, Ms. White, and Deputy Williams hitting the ground. *Id.* Because the video does not clearly contradict Ms. White's allegation that she was intentionally thrown to the floor, I shall adopt her version of the facts for the first fall in reviewing Deputy Thompson's Renewed Motion for Summary Judgment. *See Hupp v. Cook*, 931 F.3d 307, 315 n.3 (4th Cir. 2019) ("Where . . . the video 'does not "clearly" or "blatantly" contradict' [Plaintiff]'s version of the facts, we adopt her version." (citing *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276–77 (4th Cir. 2011))). However, for the reasons explained below, even if Deputy Thompson purposefully threw Ms. White to the ground, he is entitled to qualified immunity.

Ms. White hits the ground a second time later in the video. She contends "that on the second occasion in which she struck the floor, that she was deliberately thrown to the floor and that [Deputy] Thompson deliberately fell on top of her." [ECF No. 51, at 1]. That portion of the video, however, is unobstructed by the third officer's body because he shifted to the side of the scuffle after the parties first hit the ground. [ECF No. 50-1, at 0:23–28]. With respect to the second fall, the video evidence clearly shows that Deputy Thompson accidentally stumbled to the ground when he tried to stand up while holding Ms. White. *Id.* at 0:25–28. "[W]hen a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Witt*, 633 F.3d at 276 (quoting *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)). Because the video evidence blatantly contradicts Ms. White's version of events, I shall adopt the facts as demonstrated in the video for the second fall instead of Ms. White's contradicted allegation.

maintain institutional security." *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). In this case, there is a reasonable relationship between the need for force and the force used. At the time Deputy Thompson took Ms. White to the ground, she was physically resisting the deputies' efforts to place her in a cell, and she resisted with enough force to strike Deputy Williams in the face. [ECF No. 50-1, at 0:12–22]. Deputies Thompson and Williams struggled to control Ms. White, and eventually they needed the assistance of a third officer. *Id.* at 0:12–45. Under the circumstances, the need for force was great, and Deputy Thompson taking Ms. White to the ground was an objectively reasonable response. *Cf. Sanchez v. Griffis*, 569 F. Supp. 3d 496, 511–12 (W.D. Tex. 2021) (concluding that the defendant taking the plaintiff to the ground and applying two compliance strikes to the plaintiff's mid-section was not "beyond what was needed" where the plaintiff walked away from the guard without shackles in defiance of repeated verbal orders).

The third *Kingsley* factor (any effort made by the officer to temper or to limit the amount of force) also weighs in Deputy Thompson's favor. Deputy Thompson contends that as he and Deputy Williams were approaching Ms. White, she was "being told to get up and go into the cell." [ECF No. 48-2, at 21:18–21]. He states that this was not the first time Ms. White was ordered to enter the holding cell, as "Deputy Williams had told her multiple times even before that." *Id.* at 21:22–22:1. Indeed, Ms. White admits that she might have refused commands to enter the cell. [ECF No. 34-1, at 61:3–4,7–9 ("Q. Is it possible that you were told to get in the holding cell and

9

refused? . . . A. I just don't think I would have refused. Maybe if he was going to try to put handcuffs on me or something.")]. Despite the verbal and nonverbal commands, the video shows that Ms. White refused to voluntarily enter the open holding cell. Only after multiple attempts to get Ms. White to peacefully comply did Deputy Thompson physically bring Ms. White to the ground, and the amount of force he used was reasonable based on her resistance.

The fourth and sixth factors (the severity of the security problem at issue and whether the plaintiff was actively resisting) likewise favor Deputy Thompson. The video evidence demonstrates that Ms. White was physically resisting the deputies' attempt to place her in a holding cell, and the deputies struggled to control her. [ECF No. 50-1, at 0:12–25]. Ms. White had just been arrested for domestic battery, [ECF No. 34-4, at 1–2], she was unsecured in the booking room, and during the struggle, her hand struck Deputy Williams in the face, [ECF No. 50-1, 0:17–19]. Based on the circumstances, Ms. White presented a significant security problem.

The fifth *Kingsley* factor (the threat reasonably perceived by the officer) clearly weighs in favor of Deputy Thompson. As previously explained, Ms. White was unsecured, refusing commands, and acting violently prior to Deputy Thompson taking her to the ground. Ms. White attempted to fight off Deputies Thompson and Williams, and she struck Deputy Williams in the face with her hand. [ECF No. 50-1, at 0:15–21]. Given the circumstances, Deputy Thompson could have reasonably perceived Ms. White as a threat to his and the other officers' safety.

10

Finally, with respect to the second factor (the extent of the plaintiff's injury), Ms. White sustained severe injuries, including a right clavicle fracture. *See* [ECF No. 34-5, at 4]. However, given the totality of the circumstances, Ms. White's injuries, while unfortunate, were the result of Deputy Thompson employing reasonable force to end the risk she posed to him and the other officers.

Ms. White suggests that "the video proves, at a minimum, that on the second occasion in which she struck the floor, that she was deliberately thrown to the floor and that [Deputy] Thompson deliberately fell on top of her." [ECF No. 51, at 1]. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, the video evidence clearly demonstrates that Deputy Thompson attempted to stand up after taking Ms. White to the ground but he lost his balance and stumbled to the floor. [4] [ECF No. 50-1, at 0:25–28]. As a result, Ms. White hit the ground a second time. *Id.* Deputy Thompson, however, braced himself with his arms, which prevented him from falling on top of Ms. White. *Id.* Liability for accidental harm is beneath the threshold of constitutional due process. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). "[I]f an officer unintentionally trips and falls on a detainee, causing [her] harm, the pretrial

---

[4] As explained in the previous footnote, the first fall happened quickly and is not fully visible in the video. In contrast, however, the second fall is unobstructed and so clearly accidental that no reasonable jury could find otherwise. [ECF No. 50-1, at 0:23–28].

11

detainee cannot prevail on an excessive force claim." *Kingsley*, 576 U.S. at 396. In this case, there is no evidence that Deputy Thompson purposefully caused Ms. White to hit the floor a second time or that he "deliberately fell on top of her."

The court concludes that the use of force employed by Deputy Thompson was objectively reasonable. The *Kingsley* factors largely weigh in favor of Deputy Thompson and the reasonableness of his decision to purposefully take Ms. White to the ground. Moreover, Ms. White's excessive force claim fails with respect to any injuries she sustained when Deputy Thompson accidently tripped and fell over her. Because Deputy Thompson did not violate Ms. White's constitutional right to be free from excessive force, he is entitled to summary judgment based on qualified immunity.

### B. Battery (Count II)

The Supreme Court of Appeals of West Virginia has adopted the definition of battery stated in the Restatement (Second) of Torts, which provides:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*McKenzie v. Sevier*, 854 S.E.2d 236, 245 (W. Va. 2020) (quoting Restatement (Second) of Torts §§ 13(a) and (b) (Am. Law Inst. 1979)). A defendant can avoid liability for battery if he is privileged to engage in the complained of conduct. *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010). Battery claims against

police officers acting in their official capacity are evaluated according to a reasonableness standard. *See id.* However, force that would otherwise constitute a battery is not privileged if the amount of force used was excessive. Restatement (Second) of Torts § 132 ("The use of force against another for the purpose of effecting the arrest or recapture of the other, or of maintaining the actor's custody of him, is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary.").

Also, under West Virginia law, an employee of a political subdivision is immune from liability unless: "(1) [the employee's] acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [the employee's] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of" West Virginia law. W. Va. Code § 29-12A-5(b). The West Virginia Supreme Court of Appeals has explained that West Virginia's "approach to matters concerning immunity historically has followed federal law." *City of St. Albans v. Botkins*, 719 S.E.2d 863, 868 (W. Va. 2011). Consequently, much of the same analysis applicable to Deputy Thompson's invocation of qualified immunity against Ms. White's § 1983 claim applies with equal force to his invocation of statutory immunity against her state law claim.

Here, Deputy Thompson was privileged to use the reasonable force he applied to Ms. White to make her comply with orders and prevent harm to himself and others.

13

Additionally, none of the exceptions from statutory immunity apply. Deputy Thompson was acting within the scope of his employment when he forced Ms. White to the ground to regain control of her. Also, the video evidence demonstrates that Deputy Thompson's conduct was not undertaken "with malicious purpose, in bad faith, or in a wanton or reckless manner," but rather to maintain order and security. *See* [ECF No. 50-1, at 0:12–52]. Finally, the court is unaware of, and Ms. White has not pointed to, any provision of the state code that expressly imposes liability on Deputy Thompson. Accordingly, Deputy Thompson is entitled to summary judgment on Ms. White's battery claim.

## IV. Conclusion

For the foregoing reasons, Deputy Thompson's Renewed Motion for Summary Judgment [ECF No. 48] is **GRANTED**. Deputy Thompson is **DISMISSED** from this case. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 16, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE